# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DERRICK EVANS,                                )<br>                                                             )<br>                   Plaintiff,               )<br>                                                             )<br>      v.                                              )     C.A. No. 22-1180 GBW<br>                                                             )<br>THEHUFFINGTONPOST.COM, INC.,  )<br>                                                             )<br>                   Defendant.            )  | |

## REPLY BRIEF IN FURTHER SUPPORT OF
## <u>DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>

OF COUNSEL:

Joseph J. Saltarelli
Silvia N. Ostrower
HUNTON ANDREWS KURTH LLP
200 Park Avenue
52nd Floor
New York, NY 10166
(212) 309-1000

Dated: January 6, 2023

Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
jchoa@potteranderson.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .....................................................................................................................................2

I.    New York Has the Most Significant Relationship to the Case. ..........................2

      A.    Evans resides in both Massachusetts and Mississippi. ...............................2

      B.    Evans's injury, if any, occurred in multiple jurisdictions. ..........................3

      C.    The presumption that Evans's purported domicile has the most significant relationship to the parties and claim is inapplicable. ...................................4

      D.    New York's interest in the application of its law to the conduct of journalists and newsgathering organizations publishing in New York is sufficiently strong to overcome any presumption that the law of Evans's purported domicile should govern. ............................................................6

CONCLUSION ................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Aoki v. Benihana, Inc.*,
839 F. Supp. 2d 759 (D. Del. 2012) ................................................................................4, 6

*BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.*,
229 F.3d 254 (3d Cir. 2000) .....................................................................................................5

*Condit v. Dunne*,
317 F. Supp. 2d 344 (S.D.N.Y. 2004) .....................................................................................8

*Deaton v. Napoli*,
2019 WL 156930 (E.D.N.Y. Jan. 10, 2019) .....................................................................9, 10

*DeIuliis v. Engel*,
2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021) ........................................................................9

*Franklin Prescriptions, Inc. v. N.Y. Times, Co.*,
267 F. Supp. 2d 425 (E.D. Pa. 2003) .......................................................................................8

*Immuno AG. V. Moor-Jankowski*,
77 N.Y.2d 235 (N.Y. 1991) ....................................................................................................9

*Kamelgard v. Macura*,
585 F.3d 334 (7th Cir. 2009) ..................................................................................................8

*Kinsey v. N.Y. Times Co.*,
991 F.3d 171 (2d Cir. 2021) ...................................................................................................9

*Machleder v. Diaz*,
538 F.Supp. 1364 (S.D.N.Y. 1982) ........................................................................................8

*McClain v. Camouflage Assoc.*,
1994 WL 570874 (E.D.Pa. Oct. 18, 1994) .............................................................................9

*Prince v. Intercept*,
2022 WL 5243417 (S.D.N.Y. Oct. 6, 2022) ..........................................................................5

*Travelers Indem. Co. v. Lake*,
594 A.2d 38 (Del. 1991) .........................................................................................................6

## **PRELIMINARY STATEMENT**

Presumably hoping to gain a perceived strategic advantage, Derrick Evans chose to file his original defamation action against HuffPost and journalist Ashley Feinberg in Mississippi, even though HuffPost is headquartered in New York and Feinberg lives there. When HuffPost and Feinberg challenged the court's personal jurisdiction, Evans chose to litigate the issue for three years. After the Mississippi court dismissed his suit, Evans filed a second action in New York, effectively admitting the centrality of the state to the parties and his claim. In addition to HuffPost and Feinberg's presence in New York, the Article in which Evans was allegedly libeled, which had nothing to do with Mississippi, had been researched, written, edited, and published in New York.

Evans acknowledges that in refiling his suit – by then time-barred under any potentially applicable statute of limitations – he failed to consider the exception in New York's savings statute for prior actions dismissed for lack of personal jurisdiction. Seeking what amounts to a judicial do-over, Evans asks the Court to pretend the New York action was never filed, apply Mississippi law to this, his third lawsuit, and "save" his original claim. Evans never disputes that if this Court applies New York law, his claim is time-barred.

The thrust of Evans's argument is that his purported domicile in Mississippi trumps all other factors the Court is required to consider in determining which law

governs. But the "presumption" Evans relies upon – favoring the law of plaintiff's domicile in cases of alleged multistate defamation and based on the rationale that in such cases a plaintiff suffers greatest injury in his home state – is inapplicable because Evans admits he resides in two states and suffered reputational harm, if at all, in multiple states. Thus, Evans has not suffered "special injury" in Mississippi, which accordingly has no significant interest in having its law applied to Evans's claim, and under the Restatement his cause of action is deemed to have arisen in New York, where the Article was published.

In all events, as numerous courts have recognized, New York's interest in regulating the conduct of its journalists and news media companies is sufficiently strong to overcome any presumption that the law of Mississippi should govern solely because of Evans's (part-time) residence there. In that regard, the decisions Evans relies on are inapposite because none involved a New York newsgathering organization. The courts rendering those decisions had no occasion to consider the paramount and widely-recognized policy interest New York has in having its law, and its free press-related privileges, applied to newsgathering organizations that publish in New York.

## ARGUMENT

I. **New York Has the Most Significant Relationship to the Case.**

    A.     **Evans resides in both Massachusetts and Mississippi.**

Evans asserts he is a resident of Mississippi. But in sworn interrogatory

2

responses in the Mississippi action he admitted his "legal principal and permanent place(s) of residence" in 2017-2019 were in Gulfport, Mississippi and Boston, Massachusetts, adding: "[b]oth addresses *were and are my permanent places of residence*." Cowan Decl., Ex. B, Evans's Response to Interrogatory 1 (emphasis added). Evans also testified it is "very possible" he spent at least half the year or more in Massachusetts in 2017-2019. Saltarelli Decl., Ex. 1 at 13:1-16:16.

And while Evans filed tax returns in Mississippi in 2017-2019, he certified he was a "dual resident" of Massachusetts and Mississippi. Evans also filed taxes in Massachusetts for the same period, and holds a Massachusetts driver's license. *Id.* at 60:4-23, 72:17-74:9.

> B. **Evans's injury, if any, occurred in multiple jurisdictions.**

Even assuming Evans sustained reputational harm, any alleged injury occurred in multiple states. Although Evans claims he suffered injury solely in Mississippi (Opp. at 7, 9), he previously swore he suffered harm to his reputation "in Mississippi *and elsewhere*." Cowan Decl., Ex. B, Response to Interrogatory 10. Asked to explain, Evans said he suffered injury "anywhere … I go" because "there is only one me." Saltarelli Decl., Ex. 1 at 112:11-113:6. And although he refers exclusively to family members in Mississippi (Opp. at 8), Evans has an uncle (who he testified has been a surrogate father to him since childhood) in Virginia, and friends in Massachusetts, where he has lived, worked, and owned properties for

3

decades. Saltarelli Decl., Ex. 1 at 48:14-18, 130:9-131:6.

Evans also testified the Article could harm his reputation among "the alumni community of Georgetown Prep, which is *thousands of people*, very well-placed people *all over this country*." *Id.*, at 113:9-114:14 (emphases added).

### C. The presumption that Evans's purported domicile has the most significant relationship to the parties and claim is inapplicable.

Evans's opposition is anchored on the Restatement's "presumption" that in multistate defamation cases the state of plaintiff's domicile has the most significant relationship to the parties and claim. The presumption is based on the premise that such cases produce "a special kind of injury that has its principal effect among one's friends, acquaintances, neighbors and business associates in the place of one's residence." *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 765 (D. Del. 2012) (citation and quotation marks omitted).

But that underlying premise is, and the presumption resting upon it should be found to be, inapplicable because Evans has admitted he resides in two states and sustained any reputational harm in both, as well as "anywhere" else he has traveled and "anywhere" there is knowledge of the Article, including among "thousands of [Georgetown Prep alumni], … [living] *all over this country*." There is no factual basis to support a presumption that Mississippi is where Evans suffered any "special kind of injury" or, concomitantly, has the most significant relationship to the parties and claim.

4

When there is no basis for presuming plaintiff in a multistate defamation case has suffered injury solely or primarily in his state of domicile, *i.e.*, plaintiff has suffered alleged reputational harm in two or more states, the place of alleged injury "will not play an important role in the selection of the state of the applicable law" and "the place where the defendant's conduct occurred will usually be given particular weight." Restatement § 145, cmt. e; *see BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 267 (3d Cir. 2000) (where the alleged tort injury occurred in two or more states, the place where the injury-causing conduct occurred should be given particular weight in choice-of-law) (citing Restatement § 145, cmts. e & f). In identifying the state with the most significant relationship in a multistate defamation case, the court must consider "where the defendant did his act or acts of communication, such as assembling, printing and distributing" the material – here, New York. Restatement § 150, cmt. e.

Evans relies heavily upon six decisions from Delaware courts. Opp. at 10-15. All are inapposite, however, because in none was the court required to consider New York's "strong policy interests" in having its law and free press privileges govern the activities of a New York-based journalist and newsgathering organization regarding articles published in New York, a critical part of the Restatement § 6 analysis. *Prince v. Intercept*, 2022 WL 5243417, at *10 (S.D.N.Y. Oct. 6, 2022).

5

In addition, none of the six cases involved a genuine dispute concerning plaintiff's domicile, or his sworn admission that he suffered alleged reputational harm "all over this country." In five of the cases – *Avenatti, Johnson, Perlman, Schmidt, Triestman* – *defendant* sought application of the law of plaintiff's domicile, while plaintiff suggested the law of Delaware or another state with little or no connection to the defamation. In *Avenatti*, plaintiff did not even oppose the media defendant's motion requesting, *inter alia*, application of the law of his (undisputed) domicile in California.

Evans's reliance on *Aoki* is also misplaced. The *Aoki* court appears simply to have assumed defendant's press release was an "aggregate communication" implicating the presumption regarding a plaintiff's domicile, but the case did not involve a news media defendant, much less one that was based, and published an allegedly defamatory article in New York. 839 F. Supp. 2d at 765-66.

**D. New York's interest in the application of its law to the conduct of journalists and newsgathering organizations publishing in New York is sufficiently strong to overcome any presumption that the law of Evans's purported domicile should govern.**

The parties agree that to ascertain whether a state's interests are sufficiently strong to overcome the presumption that the law of a plaintiff's domicile governs in a multistate defamation case, the Court is required to weigh the Restatement § 6 factors. In doing so this Court must focus on the specific facts of the case, *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 48 (Del. 1991), not talismanically rest

6

on the presumption as Evans suggests.

In addressing the factors, Evans asserts he "resides" in Mississippi and "suffered the greatest injury" there. Opp. at 15-16. But he ignores his sworn testimony that he "resides" in Massachusetts *and* Mississippi, and suffered any alleged injury in *both* states and in others.

Evans next claims HuffPost failed to submit evidence establishing the Article was researched, written, edited, and published in New York. *Id.* at 17. But he knows HuffPost submitted sworn and unrefuted evidence to that effect in the Mississippi action. *See* Saltarelli, Ex. 2, ¶ 10.

Evans's further assertion that he and HuffPost had a "relationship" based on a 2010 blog post and a single email exchange in 2011 (Opp. at 18), is ludicrous. In the Mississippi action, HuffPost confirmed it never published anything concerning Evans other than the deleted reference to him in the Article, and that blog posts uploaded to HuffPost's "contributors" platform were *not* published by HuffPost or its employees. Saltarelli Decl., Ex. 3, HuffPost's Response to Interrogatory 24.

Moreover, the exchange between Evans and a HuffPost editor in 2011 hardly establishes a "relationship" or that HuffPost "knew" about Evans's residence when it published the Article seven years later. In fact, Feinberg declared under oath she did not know where Evans lived. Saltarelli Decl., Ex. 4, ¶ 6.

In the end, Evans devotes just over a page of his lengthy brief (Opp. at 18-

19) to the central issue of whether New York's interest in the application of its law to New York journalists and newsgathering organizations is sufficiently strong to overcome any presumption that the law of Evans's purported domicile governs.

In its opening brief, HuffPost addressed how this interest has led many courts to apply New York law in multistate defamation cases, even though the plaintiffs resided in another state. HuffPost's Mot. (D.I. 9) at 12-15, 17-18. Tellingly, Evans ignores every decision HuffPost cited. He wants the Court to ignore them too, but it must not.[1]

---

[1] Evans cites instead four inapposite and easily distinguishable cases. Opp. at 18. *Kamelgard v. Macura*, 585 F.3d 334 (7th Cir. 2009) concerned a letter to an Illinois College Board allegedly disparaging a New Jersey surgeon, *id.* at 336, not multistate defamation. Moreover, New York had no skin in the game – the issue was whether Illinois or New Jersey law applied, and there was no speech by New York media companies to regulate or protect. *Id.* at 340-44. In *Machleder v. Diaz*, 538 F.Supp. 1364, 1369 (S.D.N.Y. 1982), a reporter went to New Jersey to research his report. He investigated, interviewed plaintiff, and met with Newark authorities in New Jersey, about potentially hazardous waste in New Jersey. Taking into consideration "New Jersey's interest in governing the fault of those who come within its boundaries to investigate the news and later broadcast it there," the court applied New Jersey law. *Id.* at 1370. Conversely, HuffPost neither went to nor contacted sources in Mississippi, and the Article had nothing to do with the state. Saltarelli Decl., Ex. 4, ¶ 6. *Franklin Prescriptions, Inc. v. N.Y. Times, Co.*, 267 F. Supp. 2d 425 (E.D. Pa. 2003) involved a pharmacy plaintiff that was located in Philadelphia for 30 years and exclusively suffered injury there, unlike Evans who concedes he resides in two states and alleges he has been injured in Mississippi and "anywhere else" he goes. Finally, *Condit v. Dunne*, 317 F. Supp. 2d 344 (S.D.N.Y. 2004) is distinguishable because plaintiff was elected in California as a member of the U.S. House of Representatives. His reputation was California-centered, the allegedly defamatory statements were made in California, as well as in New York, and the defendant (a journalist) did not speak "through a New York media outlet." *Id.* at 355.

8

Three of the Restatement factors are key.

*First*, New York's strong interest in protecting free speech and freedom of the press is reflected not only in its robust anti-SLAPP statute but also in the "expansive" free speech guarantee in the state Constitution and "consistent tradition … of providing the broadest possible protection" to the press. *Immuno AG. V. Moor-Jankowski*, 77 N.Y.2d 235, 249 (N.Y. 1991) (citation omitted).

*Second*, Evans does not deny New York's strong interest in regulating its media companies. *See, e.g., DeIuliis v. Engel*, 2021 WL 4443145, at *10 (S.D.N.Y. Sept. 27, 2021) (citing *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021)). "[A]s the center of publishing in this country New York has a strong, widely recognized interest in uniformly regulating media defendants whose speech originates in New York." *McClain v. Camouflage Assoc.*, 1994 WL 570874, at *2 (E.D.Pa. Oct. 18, 1994) (citations omitted). *See* HuffPost's Mot. (D.I. 9) at 14-18 (citing additional cases).

Indeed, Evans himself cites an important decision applying the Restatement "interests" analysis in a multistate defamation case, and concluding that New York's policy interest in regulating allegedly defamatory content published in the state outweighed the interest of the state of plaintiff's domicile. *Deaton v. Napoli*, 2019 WL 156930, at *6 (E.D.N.Y. Jan. 10, 2019).

In analysis directly applicable to this case, the *Deaton* court held:

9

> "[W]hile the plaintiffs make conclusory allegations that their reputations were harmed in their home state, the Complaint does not identify any person or entity [in Rhode Island] who heard or read disparaging remarks about the plaintiffs or their business." Thus, apart from plaintiffs' residing and owing a law practice in the state, Rhode Island has minimal interest in this litigation. Instead, New York, where both defendants reside, and where the majority of the statements at issue were published, has the greatest interest in this matter. Plaintiffs' allegations include acts within New York and are of the type which New York has a strong interest in regulating. Accordingly, … the Court finds that New York has the most significant relationship to the alleged tort, and therefore its substantive law applies in this action.

*Id*., at *6 (internal citations omitted).

*Third*, a final particularly significant factor is the protection of justified expectations. HuffPost had no "reason to foresee" that an article published in New York and having nothing to do with Mississippi would cause injury in that state, or that its publication would be governed by Mississippi law. Restatement § 145, cmt. e; *see also* HuffPost's Mot. (D.I. 9) at 15-16.

## CONCLUSION

For the foregoing reasons, New York law should apply and this action should be dismissed with prejudice.

10

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| | By: */s/ Jonathan A. Choa* |
| Joseph J. Saltarelli | Jonathan A. Choa (#5319) |
| Silvia N. Ostrower | Hercules Plaza |
| HUNTON ANDREWS KURTH LLP | P.O. Box 951 |
| 200 Park Avenue | Wilmington, DE 19899 |
| 52nd Floor | (302) 984-6000 |
| New York, NY 10166 | jchoa@potteranderson.com |
| (212) 309-1000 | |
| | *Attorneys for Defendant* |
| Dated: January 6, 2023 | *TheHuffingtonPost.com, Inc.* |

**CERTIFICATE REGARDING WORD COUNT**

Pursuant to the Court's practice and procedure, undersigned counsel certifies that the text of the Reply Brief in Further Support of Defendant's Motion to Dismiss the Complaint is in Times New Roman 14-point font and combined contain 2,500 words as counted Microsoft Word for Office 365 ProPlus.

/s/ Jonathan A. Choa